IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUBREY TOWNSVILLE, | : | CIVIL ACTION |
|     Petitioner, | : | |
| | : | |
|     v. | : | |
| | : | |
| CHARLES ERICKSON, et al., | : | NO.  06-1595 |
|     Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    January 31, 2007

Before the Court is the *pro se* petition of Aubrey Townsville (alternatively "Townsville" or "Petitioner") for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  His petition challenges his state court conviction on grounds that he received ineffective assistance of counsel, that there was insufficient evidence to support the verdict, that the trial court erred in various respects, and that he was the victim of prosecutorial misconduct.  For the reasons set forth below, we **RECOMMEND** that the petition be **DENIED**.

## I. _____PROCEDURAL HISTORY[1]

On October 23, 1998, following a five-day jury trial in the Philadelphia County Court of Common Pleas before the Honorable C. Darnell Jones, II, Townsville was convicted of aggravated assault, terroristic threats, unlawful restraint, simple assault, and false imprisonment.  He was

---

[1] In preparing this Report and Recommendation, we have reviewed the following items filed with this Court: Petitioner's Form Application for Habeas Corpus Under 28 U.S.C. § 2254 ("Pet.") executed on April 9, 2006 (Doc. No. 1); the Memorandum of Law in Support of Petitioner's Petition for Writ of Habeas Corpus ("Pet'r Br.") and appended exhibits dated June 1, 2006 (Doc. No. 4); the District Attorney's Response to Petition for Writ of Habeas Corpus ("Ans."), with appended exhibits, filed on July 28, 2006 (Doc. No. 8); and Petitioner's Sur Reply in Opposition to Respondent's Response to Petition for Writ of Habeas Corpus ("Pet'r Reply"), with appended exhibit, submitted on August 17, 2006 (Doc. No. 9).  We also have reviewed the state court record received from the Clerk of Quarter Sessions of Philadelphia.

sentenced on January 25, 1999 to an aggregate term of imprisonment of fifteen to thirty years.  His conviction was affirmed on appeal by the Pennsylvania Superior Court.  *See Commonwealth v. Townsville*, No. 2532 EDA 2001 (Pa. Super. Ct. Oct. 25, 2002) [Ans. at Ex. B].  He did not seek review in the Pennsylvania Supreme Court.  (Pet. at 4-5; Ans. at 1-2.)

On or about July 2, 2003, he sought relief, *pro se*, under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-46 ("PCRA").  Counsel was appointed but filed a no-merit letter seeking leave to withdraw from the representation pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).  After advising Townsville of his intent to dismiss the PCRA petition, Judge Jones, sitting as the PCRA court, dismissed Townsville's petition on March 21, 2005 without holding an evidentiary hearing.  Townsville appealed that decision to the Pennsylvania Superior Court, which affirmed.  *See Commonwealth v. Townsville*, No. 1354 EDA 2005 (Pa. Super. Ct. Jan. 25, 2006) [Ans. at Ex. D].  Townsville did not seek review in the Pennsylvania Supreme Court.  (Pet. at 5-6; Ans. at 2-3.)

Townsville is currently incarcerated at SCI-Retreat in Hunlock Creek, Pennsylvania.[2]  He initiated the present action on April 9, 2006.  (Pet. at 11.)  The Philadelphia District Attorney's Office filed its response to his petition on July 28, 2006.  (Doc. No. 8.)

---

[2] We note that while Petitioner is not currently a resident of the Eastern District of Pennsylvania, venue here is proper in that his current confinement grew out of a prosecution and conviction in Philadelphia County.

## II.    FACTUAL BACKGROUND

Townsville's conviction arose out of an attack on a woman that occurred in Philadelphia on the evening of November 9, 1997.  The victim, Erica Campbell ("Campbell"), testified at trial that, while walking home from her bus stop on that evening, she observed a man in a red, white, and blue jacket following her in his car.  Twice she saw him exit his car near her.   She continued her walk until he pulled up in his car alongside her trying to get her attention.  At trial, she identified the man as Townsville.  (N.T. 10/16/98 at 45-56.)

Campbell testified that Townsville drove alongside her for half of a block, asking if he could talk to her and if she was married.  She answered him once or twice and kept walking.  As she approached an apartment building where she hoped to be able to place a call for help, she realized that she no longer knew where the car was.  She looked over her shoulder and saw Townsville running toward her.  She immediately swung at him, hitting him in the face.  He then hit her.  They proceeded to wrestle against the cars along the street and onto the ground.  Townsville hit her in the head with a closed fist, causing her head to ring.  Townsville then dragged her to his car.  Campbell recalled him having his arm over the top of her head as he forced her across his lap.  (N.T. 10/16/98 at 58-61, 62-63, 64.)

Campbell testified that she fought Townsville's efforts to drive his car while she hung out of the driver's side of the car.  After he succeeded in starting his car, he said to Campbell, "Bitch, I'm a fucking kill you."  He proceeded to drive the car in fits and spurts due to her resistance, hitting the car up against trees and poles on the side of the street such that the open driver's side door would smash her body.  Eventually Townsville  stopped the car and Campbell fell out.  He then re-started the car and drove off. (N.T. 10/16/98 at 61-64.)

The contents of Campbell's purse, her hat, and the jacket Townsville had been wearing were found among other items near each other on the street where the struggle occurred.  (N.T. 10/16/98 at 67.)  Inside the jacket was a pay stub and a letter addressed to Townsville.  (N.T. 10/20/98 at 101-02.)  Campbell testified that, during the course of the struggle, she scratched Townsville on the neck.  A photo introduced at trial, taken of Townsville after his arrest, showed a mark in the area of the neck where Campbell believes she scratched him.  In addition, a corrections officer who processed Townsville relative to another incident the day after the Campbell attack noted a cut on his neck.  (N.T. 10/16/98 at 20; N.T. 10/22/98 at 33, 36-37.)

After being examined at the emergency room that evening, Campbell reviewed photos at the police station in an attempt to identify her attacker.  She picked out a photo that she said looked like her assailant but admitted that she was not sure.  The person she identified was Townsville.  (N.T. 10/16/98 at 68-73; N.T. 10/20/98 at 142.)  A few days later, she identified the car Townsville had been driving after seeing it in a garage that police brought her to.  The car, a Cadillac, was registered to Townsville's mother.  (N.T. 10/16/98 at 21-24.)

An officer in a neighboring community testified that, on the morning of November 10, 1997, he observed Townsville driving the Cadillac.  The officer activated his lights and sirens.  Townsville did not pull over, however, but proceeded to drive at a high rate of speed down small side streets.  When he reached a dead end, he and his companions in the car jumped out and ran.  The officer apprehended Townsville a block away.  (N.T. 10/20/98 at 114-28.)

4

### III.    LEGAL STANDARD

Respondents contend that the claims Townsville asserts in his petition are procedurally defaulted, are not cognizable in federal habeas review, or fail on the merits.[3]  We will first outline the legal standards that govern our review and then discuss the issues raised by Townsville's petition on a claim-by-claim basis.

#### _____A. ____Exhaustion of State Remedies, Procedural Default

A prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment is that the petitioner must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  In order for a petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional issues," he must have "fairly presented" the federal claim to the state courts "by invoking one complete round of the established appellate review process."  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  If a bypassed state remedy is no longer available because it is now time-barred due to a state limitations period, the petitioner will be deemed to have procedurally defaulted those claims.  *O'Sullivan*, 526 U.S. at 848.  In such a case, he is ineligible for federal habeas relief unless he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Teague v. Lane*, 489 U.S. 288, 308 (1988) (plurality opinion); *Wainwright v. Sykes*, 433 U.S. 72 (1976).  To establish cause, the petitioner must show "that some objective factor external

---

[3] Respondents do not challenge the timeliness of the petition and it appears to us to be timely-filed pursuant to 28 U.S.C. § 2244(d)(1).

to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   To establish prejudice, the petitioner must show "actual prejudice resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).   The fundamental miscarriage of justice exception requires that the petitioner supplement his claims with a "colorable showing of factual innocence." *Id.* at 495.   The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

### B.      Standard for Issuance of the Writ

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), in cases where the claim presented in a federal habeas petition was adjudicated on the merits in the state courts, the petition shall not be granted unless the adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has made it clear that a habeas writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state

6

court "unreasonably applies it to the facts of the particular case." *Id.* With respect to the latter, the petitioner must demonstrate that the state court's analysis has been "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). In addition, this standard obligates the federal courts to presume that the "state courts know and follow the law" and precludes the federal court from determining the result of the case without according all proper deference to the state court's prior determinations. *Id.* at 24.

For the reasons set out below, we believe that Townsville has failed to meet this heavy burden as to his claims that are not procedurally defaulted.

## IV.   DISCUSSION

Ground One of Townsville's petition raises fourteen issues regarding the effectiveness of the attorneys who represented him at the trial, sentencing, and direct appeal stages of his case. Ground Two challenges the sufficiency of the evidence supporting his convictions for aggravated assault and terroristic threats. Ground Three asserts trial court error involving evidentiary rulings, jury instructions, and the sentence imposed. Ground Four asserts prosecutorial misconduct. Because many of the ineffective assistance of counsel claims are predicated on the other claims raised in the petition, we will save our analysis of those claims for last and begin with his challenge to the sufficiency of the evidence in this case.

### A.   Sufficiency of the evidence

When evaluating a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Our review of the record demonstrates that the state court applied a

sufficiency of the evidence standard that is indistinguishable from this standard.   (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A], at 10 (noting court would evaluate "whether, viewing all of the evidence admitted at trial and all reasonable inferences drawn therefrom in a light most favorable to the Commonwealth as the verdict winner, the trier of fact could conclude that all of the elements of the offense were established beyond a reasonable doubt").)   Therefore, we proceed to consider whether habeas relief should be granted under Section 2254(d)(1) because of a state court adjudication that unreasonably applied the *Jackson* standard to the facts of this particular case. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

### 1.   Conviction for aggravated assault

Pursuant to the Pennsylvania Crimes Code, a person is guilty of aggravated assault if he, *inter alia*, "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. § 2702(a)(1).   The statute defines the term "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*, § 2301.   The Pennsylvania Supreme Court has explained that "[a]n attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006).   "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result . . . ." 18 Pa. Cons. Stat. § 302(b)(1)(i).

In this case, the state court[4] found that there was sufficient evidence to support Townsville's aggravated assault conviction:

> In the instant matter, evidence established beyond a reasonable doubt that the defendant sought out the complainant, wrestled her to the ground, and beat her. The evidence further established that the defendant forcefully pulled the complainant's upper body into his vehicle and then drove said vehicle with the lower half of the complainant's body dragging along the ground and repeatedly being "smashed" by the car door each time the defendant drove too close to a tree or pole. Lastly, the evidence established beyond a reasonable doubt that the complainant's body was badly swollen, cut and bruised as a result of the attack upon her. As a further result of the serious bodily injury inflicted upon her, the complainant sustained a protracted impairment of the function of her legs.
>
> Viewing the evidence in a light most favorable to the Commonwealth, the evidence clearly establishes beyond a reasonable doubt that the defendant knowingly caused injury to the complainant under circumstances manifesting extreme indifference to the value of her life.

(Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 10-11.)  The state court also noted that "as [Townsville] and the victim struggled and fought, [Townsville] threatened, 'Bitch, I'm a fucking kill you.'" (Pa. Super. Ct. Op., 10/25/02 [Ans. at Ex. B] at 3-4 (citing N.T. 10/16/98 at 61).)

We have reviewed the evidence in light of the *Jackson* standard and do not find the state court's rejection of this claim to be unreasonable.  Campbell's testimony at trial provided sufficient

---

[4] On direct appeal, the Superior Court adopted the trial court's opinion as its own, supplementing Judge Jones's analysis with only minor comments. (Pa. Super. Ct. Op., 10/25/02 [Ans. at Ex. B] at 2, 5.)  Because the Superior Court did not find it necessary to repeat Judge Jones's analysis, we cite to his opinion as "the" state court opinion.  Similarly, on PCRA review, Judge Jones provided an extensive written opinion for the PCRA court, which the Superior Court found "thoroughly addressed and properly rejected" all of the claims Townsville raised. (Pa. Super. Ct. Op., 1/25/06 [Ans. at Ex. D] at 11.)  Again, therefore, our reference in this Report to the rationale for "the" state court decision on a particular claim may refer to an opinion authored by Judge Jones.

evidence that Townsville attempted to cause such injuries to her as would create a substantial risk

of death (and thus meet the definitions under 18 Pa. Cons. Stat. § 2702(a)(1) and § 2301) when he

beat her and drove his car while her lower body hung out of it and was smashed by the open car door.

His intent to inflict serious bodily injury was manifested by his threat that he would kill her, coupled

with his actions preceding and following that statement.  Because the Commonwealth was not

required to prove that Campbell actually sustained a serious bodily injury, the extent of her resulting

impairment is not determinative; what was necessary was evidence of an action by Townsville

accompanied by an intent to inflict serious bodily injury.  *See Commonwealth v. Alexander*, 383 A.2d

887, 889 (Pa. 1978).  *See also Commonwealth v. Matthew*, 909 A.2d 1254, 1258 (Pa. 2006) (re-

affirming *Alexander*'s totality of the circumstances test regarding intent to inflict serious bodily

injury).[5]  The Commonwealth presented such evidence to the jury in this case.  The alleged

deficiencies in the record to which Townsville directs our attention are inapposite, and his attempts

to paint Campbell as the aggressor are unavailing.[6]

---

[5] After the briefing closed in this case, the Pennsylvania Supreme Court issued its decision in
*Commonwealth v. Matthew*, a case in which the defendant was convicted of aggravated assault with
respect to a victim who did not suffer any bodily injury.  *Commonwealth v. Matthew*, 909 A.2d 1254
(Pa. Nov. 22, 2006).  In that case, the defendant pushed a loaded gun against the victim's throat,
continued periodically to point the gun at the victim, and yelled at the victim, "Mother f-cker, you're
f-cking dead.  I'm going to f-cking kill you."  The defendant fled the scene, however, before doing
anything further.  *Matthew*, 909 A.2d at 1256.  The court found sufficient evidence to satisfy the
"attempt" element of the aggravated assault charge in light of the testimony that the defendant
pushed a loaded gun against the victim's throat, threatened to kill him, and pointed the gun at him
before fleeing the scene.  *Id.* at 1259.  The court also found sufficient evidence to satisfy the "intent"
element, that is, the intent to inflict serious bodily injury upon the victim, because the defendant
verbalized a threat to kill him.  *Id.*  Alternatively, the court found the intent to inflict serious bodily
injury could be inferred from the defendant's conduct in pointing the loaded gun at the victim.  *Id.*

[6] Townsville contends that there was insufficient evidence to support his aggravated assault
conviction because: (1) Campbell admitted in her testimony that *she* was "the attacker throughout

As the state court's rejection of this claim does not constitute an unreasonable application of the *Jackson* standard, it does not provide a basis for habeas relief.[7]

### 2.  Terroristic threats conviction

As of the relevant date in this case,[8] Pennsylvania law provided that a person was guilty of the crime of terrorstic threats if, *inter alia*, "he threatens to commit any crime of violence with intent to terrorize another . . . ."  18 Pa. Cons. Stat. § 2706.

Petitioner contends in this petition that there was insufficient evidence to support this conviction because Campbell testified that he made the statement, "Bitch, I'm a fucking kill you" after she bit his arm, which rendered it a "spur-of-the-moment statement" made in anger and not one

---

the altercation"; (2) Townsville did not have the requisite mens rea of recklessness with regard to a known risk; (3) he did not have the requisite *actus reus*, because he "was the one being attacked" and Campbell "was the one in control of the altercation"; (4) there was no causation, again because Campbell was the attacker; and (5) there was no proof he acted with specific intent to cause serious bodily injury, particularly when he sought to avoid injury by stopping the car when Campbell tried to turn it into a tree.  (Pet. at 9, 9B, 9B(i).)  We share Respondents' incredulity, (Ans. at 10), that Townsville would insist in his papers that *he* was the victim in the "altercation" with Campbell and that he would return to this theme in his reply brief.  (*See* Pet'r Reply at 5 (describing Campbell as "the lunatic" from whom he attempted to get away).)

[7] Judge Jones's opinion suggests that he viewed the conviction to be supported based on Campbell having sustained a serious bodily injury.  (*See* Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 10-11 (noting that Campbell "sustained a protracted impairment of the function of her legs").)  *See also* 18 Pa. Cons. Stat. § 2301 (defining "serious bodily injury" to include, *inter alia*, injury causing "protracted loss or impairment of the function of any bodily member or organ").  We believe the state court's rejection of Townsville's claim can be supported without this Court having to resolve whether the fact that Campbell experienced pain on walking for the first three days and that she did not teach aerobics for three weeks, (N.T. 10/16/98 at 66), would support a finding that she suffered a "protracted loss or impairment of the function of" a bodily member or organ.  Again, aggravated assault may be established where one *attempts* to cause serious bodily injury even when no serious bodily injury actually results.

[8] The statute was amended in 1998 and 1999, subsequent to the November 9, 1997 incident that gave rise to this prosecution.

11

for the sole purpose of instilling terror.  (Pet. at 9B(i)-9B(ii).)

We do not see in the record any determination by the state court on this issue, nor does Respondents' answer address this claim.  Townsville's direct appeal challenged the sufficiency of the evidence only as to his conviction for aggravated assault; he did not raise a challenge to the sufficiency of the evidence supporting the terroristic threats conviction at that time.  (1925(b) Statement, 10/25/01 [Ans. at Ex. A, attach. A] at ¶ 2.)  On PCRA review, the Superior Court made reference to a claim as to the sufficiency of the evidence on terroristic threats being among those raised by Townsville in his Statement of Questions for Review, (Pa. Super. Ct. Op., 1/25/06 [Ans. at Ex. D] at 9), and this issue is among those identified in the *pro se* 1925(b) Statement that Townsville filed. (1925(b) Statement, 6/5/05 (contained in state court record).)[9]  The Superior Court, however, did not proceed to discuss this issue in its opinion, and this issue was not addressed in the lower court opinion adopted by the Superior Court.

We suspect that the Superior Court did not address this issue because Townsville did not raise any question as to the sufficiency of the evidence supporting the terroristic threats conviction in either his original PCRA petition or his responses to the *Finley* letters submitted by his appointed counsel to the PCRA court.  (State court record.)  Rather, it appears that Townsville raised this claim for the first time in his appeal of Judge Jones's dismissal of his PCRA petition.  Given the procedural

---

[9] Townsville's 1925(b) Statement as to his PCRA petition is dated June 5, 2005.  This would have been just after the filing of Judge Jones's June 2, 2005 opinion supporting the dismissal of Townsville's PCRA petition.  Presumably these two filings crossed each other in the mail.  It does not appear that Townsville had been directed by Judge Jones to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).  Rather, notice was provided to Townsville in April 5, 2005 that Judge Jones had formally dismissed his PCRA petition.  Townsville filed a timely Notice of Appeal on April 13, 2005 and apparently submitted the 1925(b) Statement of his own accord two months later.  *See* state court record.

posture, there is a serious question as to whether Townsville has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b). *See also* 42 Pa. Cons. Stat. § 9544(b) (deeming waived on PCRA review any issue not litigated in prior proceeding where claim could have been raised). However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents did not assert procedural default as to this claim, we will consider it.

A prosecution for terroristic threats requires the Commonwealth to prove that "1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. Ct. 2003) (internal quotations and citations omitted). As Townsville correctly observes, the terroristic threats statute "is not meant to penalize mere spur-of-the moment threats which result from anger." *Id.* However, "being angry does not render a person incapable of forming the intent to terrorize." *Id.* In determining whether the defendant manifested the requisite intent, the court must consider the totality of circumstances. *Id.*

Our review of the record confirms that there was sufficient evidence presented for the jury to find beyond a reasonable doubt that Townsville's threat was made with the requisite intent to terrorize. Campbell's testimony provided sufficient evidence that Townsville made this threat of further violence in the course of what was already a terrifying attack on her. The fact that the threat may have followed upon Campbell's efforts to extricate herself from Townsville by fighting back

does not mitigate the threatening nature of the communication.[10]

We conclude that neither of Townsville's challenges as to the sufficiency of the evidence supporting his convictions entitle him to relief.

**B.      Trial court error**

Ground Three of Townsville's petition sets forth ten instances of alleged trial court error for which he seeks habeas relief, presumably on due process grounds. Respondents contend that nearly all of the sub-claims are not cognizable on federal habeas review because they concern matters of state law, that they are procedurally defaulted, and/or that the state courts' rejection of these claims was not unreasonable. We agree that the alleged instances of trial court error do not provide a basis for habeas relief.

**1.      Failure to state reasons for departure from sentencing guidelines**

Townsville complains that the trial court imposed the ten- to twenty-year sentence for the aggravated assault conviction "without stating any reasons for [departing from] the guidelines and without preparing a [c]ontemporaneous written statement." He also complains that Judge Jones "did not even attempt to explain" why his case "was so much worse than a typical Aggravated Assault" that it would warrant "such an aggravated sentence." (Pet. at 9, 9C.)

Townsville raised various issues on PCRA review regarding the legality of his sentence. The

---

[10] These circumstances are distinguishable from those in which the state courts have found that comments made in a more balanced, albeit heated, verbal exchange did not rise to the level of terroristic threats. *See, e.g., Reynolds*, 835 A.2d at 730 (describing *Commonwealth v. Anneski*, 525 A.2d 373 (Pa. Super. Ct. 1987), as case "where two neighbors were threatening each other with equally violent acts during a heated argument"). *Cf. Reynolds*, 835 A.2d at 730 (finding that threatening complainant's life and pointing gun to his face in response only to complainant calling defendant's wife a "troll" warranted prosecution under § 2706).

14

Superior Court found the claims regarding his sentence to have been waived because they were not presented on direct appeal and were not presented on PCRA review through a layered claim of attorney ineffectiveness.  (Pa. Super. Ct. Op., 1/25/06 [Ans. at Ex. D] at 12-13.)  As a result, the claim Townsville seeks to raise here was not fairly presented in the state court and is now procedurally defaulted.  Petitioner has not demonstrated any cause for his failure to have properly exhausted this claim and we see no basis for excusing the default.[11]

### 2.      Admission of mug shot photo array

Townsville complains that the trial court erred in "allow[ing] redacted mug shots" from his prior arrests over several different years "to be used during the trial," from which he contends a juror would likely believe that Townsville had been involved in criminal activity several times in the past.  (Pet. at 9C.)  He contends that later testimony from a detective suggesting that Townsville had been involved in a robbery of an elderly woman[12] worked to reinforce in the jurors' minds that Townsville was a criminal and denied him a fair trial.  (*Id.*; Pet'r Br. at 20-21; Pet'r Reply at 6-7.)

This appears to be another claim for which we have no determination by the state court.  Townsville does not appear to have raised this claim at any point on direct review and did not include this issue in his PCRA petition or his responses to counsel's *Finley* submissions on PCRA review.  He did, however, raise it in the 1925(b) Statement he filed on June 5, 2005, (Stmt. of

---

[11] We note that Judge Jones, on PCRA review, nonetheless addressed this issue.  His opinion explained that, in accordance with 204 Pa. Code § 303.1(d), he completed a Guidelines Sentence Form and noted a departure above the aggravated range on the basis of "Defendant's criminal record and his conduct in this case."  (Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 23.)  This would appear to satisfy the "contemporaneous writing" requirement to which Townsville refers.

[12] We discuss the testimony of Det. Gaylord in greater detail in Section IV.B.7, *infra.*

Matters Complained of on Appeal, 6/5/05, at 5 (contained in state court record)), and in his Statement of Questions Presented in his brief to the Superior Court.  (Excerpt of Appellant's Br. to Pa. Super. Ct. at Question 5 (appended to Doc. No. 9).)  As with Townsville's claim regarding the sufficiency of the evidence supporting his terroristic threats conviction, the procedural posture of this claim raises an issue as to whether Townsville has "fairly presented" this claim to the state court in satisfaction of the exhaustion requirement of Section 2254(b).  However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents do not assert procedural default as to this claim but rather address its merits, we will consider it.

Townsville's submissions to this Court provide no citations to the record in support of this claim.  We note that the Commonwealth marked as an exhibit at trial the photo of Townsville that Campbell identified from an array she reviewed at the police station following the attack.  (N.T. 10/16/98 at 69-73, 101-02.)  In ruling on defense counsel's objection, the trial court explained that "[n]ormally the photograph which was the basis for the prior out-of-court identification is admitted into evidence. . . .  There is no basis to preclude the introduction of this photograph.  It again is an issue of weight and not an issue of admissibility."  (*Id.* at 84.)

When considering an assertion of trial court error, we must evaluate whether the instance of alleged error "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The ruling at issue must be considered in the context of the entirety of the trial, not in isolation.  *Id.*

We are not persuaded that the admission of the photograph with which Campbell first identified Townsville as her assailant was in error or that the admission of this evidence, even when coupled with Det. Gaylord's reference to the other robbery in which this same car was involved, so

16

infected the trial that Townsville's resulting conviction can be said to violate due process.[13]  Given that Campbell and a police detective were properly permitted to testify about how she came to identify Townsville as her assailant, the admission of the photograph itself cannot be deemed to require habeas relief.

### 3. Jury instruction under *Kloiber*

Petitioner contends that the trial court instructed the jury that it "could" receive with caution the identification of Townsville made by Campbell but that *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954),[14] required that the court instead instruct the jury that it "must" receive the identification with caution.  (Pet. at 9C, 9C(i); Pet'r Br. at 21-22.)

On both direct appeal and PCRA review, the state court rejected as meritless Townsville's contention that the language used in the *Kloiber* charge was improper.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 8-10; Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 14-15.)  The court cited to the following portion of the jury instructions in rejecting Townsville's claim:

> In her testimony, Erica Campbell has identified the defendant as the person who committed the crime.  There is a question of whether this identification is accurate.  A victim or other witness can sometimes

---

[13] We note that the trial judge offered to instruct the jury that they were not to make any assumptions from the existence of the photograph that Townsville had any kind of arrest record or criminal background.  Counsel declined this offer, however, apparently because he believed such an instruction would only increase the jury's curiosity about how the police came to be in possession of Townsville's image.  (N.T. 10/16/98 at 79-80.)

[14] *Kloiber* stands for the proposition that, "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."  *Commonwealth v. Kloiber*, 106 A.2d 820, 826-27 (Pa. 1954).

make a mistake when trying to identify the perpetrator.  If certain factors are present, the accuracy of identification testimony is so doubtful that a jury _**must receive it with caution**_.  Identification testimony _**must**_ **be received with caution** if the witness, because of bad position, poor lighting, or other reasons, did not have a good opportunity to observe the perpetrator, or if the witness in his or her testimony, is not positive as to identity, or if the witness' positive testimony as to identity is weakened by qualification, hedging, or inconsistencies in the rest of his or her testimony, or when shown photographs before trial, if there is a failure to identify the defendant in a lineup or in identifying someone else.

If you believe that one or more of these factors are present, then you _**must consider with caution**_ the testimony of Erica Campbell in identifying the defendant as the person who committed the crime.  If however, you do not believe that at least one of these factors are present, then you need not receive the testimony with caution and you may treat it like ordinary testimony and as a statement of fact.

You should consider all of the evidence relevant to the question of who committed the crime, including the testimony of Erica Campbell and any evidence of facts and circumstances from which identity or nonidentity of the perpetrator may be inferred.  You cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt by all the evidence direct and circumstantial, not only that the crime was committed, but that it was the defendant who committed the crime.

(Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 9 (quoting N.T. 10/22/98 at 162-63 and adding emphases); Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 14 (same).)

Our review of the trial transcript confirms that Judge Jones provided the instruction as quoted above.  Townsville appears to take issue with the fact that the trial court let the jury determine if one of the factors triggering the cautionary instruction was present rather than making that decision for the jury and ordering them to receive the testimony with caution.  Given that Campbell was not confident in her initial identification of Townsville in the photo array and that she did not positively identify him in a subsequent line-up, (N.T. 10/20/98 at 26-30, 66-67), the *Kloiber* instruction was

18

warranted.  We do not believe, however, that the trial court's decision to leave this preliminary

determination to the jury "so infected the entire trial that the resulting conviction violate[d] due

process."  *Estelle*, 502 U.S. at 72.  The instruction conveyed to the jury that Campbell's prior

equivocations on identity were important factors.  However, in light of the fact that Campbell's in-

court identification was one of only several pieces of evidence linking Townsville to this crime,[15]

any defect in this instruction does not undermine our confidence in the conviction returned by the

jury.  Petitioner is entitled to no relief based on this claim.

### 4.    Instruction to jury regarding flight

Townsville contends that the trial court erred when it "charged the jury on Fleeing from

police in this case" because he "did not flee from police but had fled from police after committing

a robbery the following morning" and was charged with fleeing the police in that case.  (Pet. at

9C(i).)

Townsville raised this claim both on direct appeal and on PCRA review, and the state courts

rejected it in both instances.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 18; Comm. Pl. Ct. Op.,

6/2/05 [Ans. at Ex. C] at 20-21.)  The state court noted that, under state law, a flight instruction may

be warranted based on circumstances under which a jury could infer that the defendant knew he was

wanted for a crime and that the prosecution need not establish direct evidence of such knowledge

in order for a flight instruction to be warranted.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 18;

Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 21 n.2.)  The court then defended its giving of the flight

---

[15] *E.g.*, the scratch on Townsville's neck; the identification of his car; and the identification of the
red, white, and blue jacket worn by the attacker and containing a pay stub and letter with
Townsville's name on it.

instruction in light of the evidence that: (1) a vehicle owned by Townsville's mother, and matching the description of the one used in the crime, was missing from her home on the night Campbell was attacked; (2) his mother apparently did not know of Townsville's whereabouts on that night; and (3) Townsville "attempted to 'dodge' the police" when they tried to stop him in that car the day after the attack.  (*Id.*)[16]

We appreciate Townsville's concern that his flight could have evidenced, in some part at least, his consciousness of guilt as to the robbery he had just committed — about which the jury was not to hear any testimony — rather than his consciousness of guilt exclusively as to the Campbell incident.  However, in light of the fact that the circumstances surrounding his flight the next morning linked him to the Campbell attack — in that he was in the same car — we conclude that giving a flight instruction cannot be deemed unreasonable.  Moreover, the instruction specifically referred to evidence of flight as "a circumstance tending to prove the person is conscious of guilt" but that

---

[16] The instruction at issue was the following:

> There was evidence which tended to show that the defendant fled from the police.  The credibility, weight, and effect of this evidence is for you to decide.  Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees, such flight is a circumstance tending to prove the person is conscious of guilt.  Such flight or concealment does not necessarily show consciousness of guilt in every case.  A person may flee for some other motive and may do so even though innocent.
>
> Whether the evidence of flight in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives which may have prompted the flight.  You may not find the defendant guilty solely on the basis of evidence of flight.

(N.T. 10/22/98 at 164.)

flight did "not necessarily show consciousness of guilt."  The instruction also warned the jury that it could not convict Townsville solely based on evidence of flight.  (N.T. 10/22/98 at 164.)  As we do not believe this portion of the instruction amounted to a violation of federal due process principles, habeas relief is not warranted on this claim.[17]

### 5.    Jury instruction on elements of aggravated assault

Townsville contends that his due process rights were violated when the trial court instructed the jury with respect to only two elements of the offense of aggravated assault and "failed to charge on the elements of *actus reus*, causation and a *mens rea* of recklessness."  (Pet. at 9C(i); Pet'r Br. at 23-24; Pet'r Reply at 8.)

This appears to be another claim for which we have no determination by the state court because Townsville raised it for the first time in his 1925(b) statement filed on June 5, 2005 following the dismissal of his PCRA petition.  (Stmt. of Matters Complained of on Appeal, 6/5/05, at 7-8 (contained in state court record).  *See also* Excerpt of Appellant's Br. to Pa. Super. Ct. at Question 8 (appended to Doc. No. 9).)  Therefore, we again have an issue as to whether Townsville

---

[17] In his brief, Townsville also appears to contend that his Fifth Amendment rights were violated because the prosecution used information regarding his flight in two cases.  (Pet'r Br. at 22-23 & Addendum A (reflecting plea on Nov. 2, 1998 to charge of "Fleeing or Att. to Elude P.O.", Bill of Information No. 7135-97).  *See also* Pet'r Reply at 7 (contending that instruction violated his Fifth Amendment Double Jeopardy Rights).)  Townsville may be confusing the term "charge."  It appears that Townsville was "charged with" — that is, prosecuted for — what we assume to be a violation of 75 Pa. Cons. Stat. § 3733 for his actions following the commission of a robbery.  This is different from the issue of the jury being "charged on" — that is, instructed regarding the law pertaining to — how his actions following the Campbell attack may have evidenced his guilt.  In any event, he was not *charged with* fleeing the police in this case such that the Fifth Amendment Double Jeopardy provision is implicated in any way.  Furthermore, as the state court explained, his attempt to "dodge" the police the day after the Campbell attack was not the only factor warranting a jury instruction on flight in this case.

has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b). However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents do not assert procedural default as to this claim but rather address its merits, we will consider it.

The trial court instructed the jury as follows:

> The defendant is charged with aggravated assault, attempting serious bodily injury. In order to find the defendant guilty of aggravated assault, you must find that each of the elements of the crime has been established beyond a reasonable doubt. There are two elements. First, that the defendant attempted to cause serious bodily injury to Erica Campbell. In order to find that the defendant attempted to do this, you must find that he engaged in conduct which constituted a substantial step towards causing serious bodily injury to Erica Campbell. And, two, that the defendant's conduct in this regard was intentional, or, in other words, that it was his conscious object or purpose to cause such serious bodily injury.
> Serious bodily injury is defined as as [sic] follows: Bodily injury which creates a substantial risk of death or which causes serious impairment of the function of any bodily member or organ.
> If after considering all of the evidence you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault, attempting serious bodily injury. Otherwise you must find the defendant not guilty of aggravated assault, attempting serious bodily injury.

(N.T. 10/22/98 at 151-52.)

We do not see any deficiency in the court's instruction as to aggravated assault that would undermine our confidence that Townsville's conviction on this charge was obtained through a fair trial. The trial court properly explained the elements of the offense and defined the key terms used in the statute.[18] The court's instruction addressed the issue of *actus reus* in that the jury was told that

---

[18] We discussed the elements of aggravated assault more fully earlier in this Report.

22

it had to find that the defendant "engaged in conduct which constituted a substantial step towards causing serious bodily injury to Erica Campbell." While Townsville contends that the court erred in not requiring the jury find a *mens rea* of recklessness, such a finding is not required under the "attempt to cause serious bodily injury" type of aggravated assault. Moreover, the court properly instructed that the requisite *mens rea* for the theory of aggravated assault under which Townsville was being prosecuted required the jury to find the more demanding *mens rea* of an affirmative intent to cause serious bodily injury as opposed merely to having caused such injury through reckless conduct. Finally, while Townsville contends that the trial court failed to instruct the jury on "causation," the theory under which Townsville was being prosecuted did not require the victim to have actually sustained serious bodily injury. As a result, no "causation" instruction was necessary. We conclude that habeas relief is not warranted on this claim.

### 6.    Jury instruction on terroristic threats

Townsville contends that the trial court's jury instruction regarding the crime of terroristic threats was incomplete because it failed to explain that Townsville could not be convicted of that crime if the jury found that the threat was made in the "spur of the moment" and out of anger. (Pet. at 9C(i).  *See also* Pet'r Br. at 24.)

This is another claim for which we have no determination by the state court because Townsville raised it for the first time in his 1925(b) Statement filed following the dismissal of his PCRA petition. (Stmt. of Matters Complained of on Appeal, 6/5/05, at 8 (contained in state court record).  *See also* Excerpt of Appellant's Br. to Pa. Super. Ct. at Question 9 (appended to Doc. No. 9).) Although there is an issue as to whether Townsville has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b), in light of the fact that the state

23

court did not make a finding that this claim was waived and that Respondents do address its merits, we will consider the claim.

The trial court instructed the jury with respect to the crime of terroristic threats as follows:

> Last, the defendant is charged with terroristic threats. The defendant by being charged with this crime must be proven to have been guilty of this crime beyond a reasonable doubt. Again the elements of this crime likewise must be proved beyond a reasonable doubt. There are two elements: One, that the defendant threatened to commit a crime of violence, in this case to kill the victim; and, two, that the defendant acted with the intent to terrorize the victim.
> A person acts with the intent if it is his conscious object or purpose to engage in particular conduct or to cause a particular result.
> If after considering all the evidence you find that the Commonwealth has established beyond a reasonable doubt all of the elements that I have stated, you should find the defendant guilty of terroristic threats. Otherwise you must find the defendant not guilty of this crime.

(N.T. 10/22/98 at 159-60.)

We do not see any deficiency in the court's instruction as to terroristic threats that would rise to the level of a due process violation and undermine our confidence in Townsville's conviction on this charge. The trial court properly explained the elements of the offense as it was defined at 18 Pa. Cons. Stat. § 2706. The court's instruction addressed the issue of the *mens rea* that was required in order to convict Townsville: the jury had to find that it was Townsville's "conscious object or purpose" to terrorize Campbell when he threatened to kill her. Townsville contends that the jury should affirmatively have been told that it could not convict him if they found the threat was made in the spur of the moment and out of anger. He points us to no case law, however, requiring such

an instruction, nor are we aware of any such holding.[19]  We do not believe the due process clause required the trial court to have given any additional instruction beyond what was provided with respect to the terroristic threats charge.  As a result, we conclude that habeas relief is not warranted on this claim.

### 7. Refusal to grant mistrial following testimony regarding other crime

Townsville contends that it was "unconstitutional for information concerning other arrests to be testified about" in his trial and that Det. Gaylord's testimony that Townsville's car "was used in a robbery where a[n] old [l]ady was robbed and ran over" thus warranted a mistrial.  (Pet. at 9C(i).)  He argues that the prejudice done to him by this testimony could not be cured by an instruction that the jury ignore the testimony and that the only way to protect Townsville's due process rights and his rights under the Double Jeopardy Clause was to declare a mistrial.  (Pet'r Br. at 26; Pet'r Reply at 9.)

The state court addressed this issue on direct review in the context of a claim of ineffective assistance of counsel.  The state court defended the denial of the mistrial request and concluded that no prejudice to Townsville could be presumed in light of the court's cautionary instruction that the jury is presumed to have followed.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 17.)  We agree.

---

[19] In support of his contention on this point, Townsville cites to the statutory definition of terroristic threats and two cases that involved prosecutions for terroristic threats: *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa. Super. Ct. 2003), and *In re J.H.*, 797 A.2d 260 (Pa. Super. Ct. 2002).  Those cases discuss the type of activity that warrants prosecution for terroristic threats.  They do not, however, stand for the proposition that the court is required to instruct the jury "that the statute is not meant to penalize mere spur-of-the-moment threats which result from anger."  (Pet'r Br. at 24.)  Neither case involved a challenge to the jury instructions as to terroristic threats.  Moreover, both cases noted that "being angry does not render a person incapable of forming the intent to terrorize." *Reynolds*, 835 A.2d at 730; *J.H.*, 797 A.2d at 263.

The testimony about which Townsville complains was elicited by his attorney on cross-examination of Det. Gaylord when he was exploring the basis for the consent given by Townsville's mother to search her car and a reference on the consent form to "evidence of . . . a robbery which occurred on 11/9/97." Det. Gaylord testified that the robbery notation did not correspond to the Campbell incident but, when pressed by further questions from defense counsel,[20] explained that "the car was taken on the 8th, there was a robbery of an old lady which was ran over [sic] by the same car, this car." (N.T. 10/20/98 at 165.) The trial court denied counsel's request for a mistrial and instructed the jury that Det. Gaylord's testimony referencing "a purported robbery and subsequent injury to a lady by reason of a car having been involved in that other incident" "has absolutely nothing to do with this case nor with this defendant and it was evidence that should not have been given to this jury, but was done in error." He cautioned the jury to "totally disregard that portion of that witness' testimony as it has absolutely no bearing, no relevance whatsoever to the issues involved in this case, nor to the defendant in this case." (N.T. 10/20/98 at 173.)

We cannot say that the testimony given by Det. Gaylord was so prejudicial, nor the curative instruction so deficient, that Townsville's due process rights were implicated. The testimony was not elicited by the Commonwealth, nor did Det. Gaylord's statements indicate that Townsville was the suspect in that other incident.[21] His testimony on this point pertained solely to a car owned by

---

[20] Defense counsel's questions were part of an attempt to show that the detective made various mistakes in his investigation. (N.T. 10/20/98 at 167.)

[21] In fact, there was evidence introduced at trial suggesting that Mrs. Townsville's nephew might have stolen the car before it was used in the Campbell attack. As Respondents point out, the trial court's instruction that this robbery incident had "absolutely nothing to do with . . . this defendant" supported Townsville's alibi theory at trial that someone else was using this car the night that Campbell was attacked. (See also N.T. 10/20/98 at 170-72 (sidebar discussion of same).)

Townsville's mother, for which she had provided a consent to search. The trial court's decision not to grant a mistrial under these circumstances does not represent an unreasonable application of federal law and does not provide a basis for habeas relief.

### 8.    Admission of rebuttal testimony

Townsville contends that the trial court erred in permitting the Commonwealth to call rebuttal witnesses[22] who were not previously disclosed to defense counsel and that this error resulted in his due process rights being violated. (Pet. at 9C(i), 9C(ii). *See also* Pet'r Br. at 27-29.)

The Superior Court addressed this issue on direct appeal. The court found that Townsville waived this issue because he raised it for the first time on appeal. (Pa. Super. Ct. Op., 10/25/02 [Ans. at Ex. B] at 2, 3 (citing *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998), and noting that this portion of issue presented on appeal was not included in 1925(b) statement).) As a result, this claim has been procedurally defaulted. Townsville has not demonstrated cause as to excuse this default, nor has he demonstrated actual innocence. Therefore, we will not consider this claim.

### 9.    Affect on sentencing of trial judge's "dislike" of the case

Townsville contends that the trial court erred by allowing the judge's "personal feeling," (Pet'r Br. at 30), and his "dislike for the case[,] which was clear from the judge's statement at the beginning of sentencing[,] to cre[e]p into the sentencing and influence the Petitioner's sentence."

---

[22] The witnesses were two detectives who testified as to conversations they had with Mrs. Townsville which contained statements that were inconsistent with her in-court testimony regarding her knowledge of her son's whereabouts around the time of the Campbell attack and at the time she reported her car as stolen. The prosecutor learned of Det. Grebloski's November 10, 1997 conversation with Mrs. Townsville for the first time during Townsville's trial. She told defense counsel about it when court next resumed, which was prior to the point in trial at which the defense called Mrs. Townsville to testify. (N.T. 10/22/98 at 40-44.)

27

(Pet. at 9C(ii).)

We agree with Respondents that this claim was not among the claims raised at any time in state court.  Townsville counters that he identified this issue in his brief to the Superior Court on PCRA review and thus fairly presented the claim, even if that court ignored the claim in its decision. (Pet'r Reply at 10.)  Townsville directs our attention to the portion of his brief to Superior Court listing the questions presented for review.  That document, however, does not reflect that he raised an issue as to his sentence having been affected by the judge's "dislike" for the case.[23]  Our review of the record confirms that Townsville has not "fairly presented" this issue to the state courts.  Given that the time to do so has passed, his claim is defaulted.  Townsville has not come forward with any showing that there was cause for this procedural default, nor has he alleged actual innocence as to excuse the default.  As a result, we will not consider this claim.

### 10. Sentence above guidelines range

In his final claim of trial court error, Townsville contends that the trial court improperly sentenced him outside of the applicable sentencing guideline given that his case "was clearly one of a mutual fight and was not so extreme as to warrant departure from the norm that the sentencing guidelines are based upon."  (Pet. at 9C(ii).  *See also* Pet'r Br. at 30.)  He also argues that it was improper for the court to consider his prior record during sentencing, as that amounted to a violation of the Double Jeopardy provision of the Fifth Amendment.  (Pet'r Br. at 30.)

Townsville presented this issue to the Superior Court on PCRA review.  That court, however,

---

[23] In Townsville's brief in this matter, he combines his discussion of this sub-claim with his final sub-claim.  While the two issues appear related, we consider them separately in light of the manner in which he delineated his issues in his petition.  It is clear, in any event, that his claim regarding Judge Jones's alleged feelings regarding the case was not identified as an issue in state court.

found that Townsville waived the issue by not bringing it earlier.  (Pa. Super. Ct. Op., 1/25/06 [Ans. at Ex. D] at 11-13.)   As a result, we consider this issue to have been procedurally defaulted. Townsville has presented us with no basis for excusing the exhaustion requirement here. Furthermore, we note that "[t]he severity of [a petitioner's] sentence alone constitutes no ground for [federal habeas] relief."  *Unites States ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (*citing Townsend v. Burke*, 334 U.S. 736, 741 (1948)).  We conclude that the instances of alleged trial court error in this case provide no basis, either individually or in the aggregate, for habeas relief.

### C.    Claims of prosecutorial misconduct

As his fourth ground for relief, Townsville alleges that he was subjected to prosecutorial misconduct in two areas.  Neither claim, however, provides a basis for us to recommend habeas relief.

### 1.    *Brady* claim

Townsville contends that the Commonwealth withheld medical records concerning Campbell's treatment in the emergency room following the attack and that these records would have shown that her injuries were "consistent with those of [a] mutual fight" and not those that would have been obtained from an aggravated assault or an attempt to inflict serious bodily injury.  (Pet. at 9, 9D.)  He contends that the prosecution suppressed this evidence, that it would have been favorable to him at trial, and that it was material to the issues at trial.  (Pet'r Br. at 32-33.)

Habeas relief would be warranted where a petitioner demonstrated that he suffered prejudice due to the suppression by the prosecution of evidence that was favorable to him either because the suppressed evidence was exculpatory or because it bore on the credibility of a key prosecution

witness.  *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963).

On PCRA review, Townsville raised various claims relating to the hospital records that he contends were withheld.  (*See* Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 5 (discussing Townsville's claim that hospital records were "newly-discovered evidence" supporting his petition); *id.* at 8 (discussing claim of ineffective assistance of counsel for failure to challenge sufficiency of evidence by using, *inter alia*, hospital reports concerning Campbell's injuries); *id.* at 9 (discussing claim of attorney ineffectiveness for failure to subpoena records or call treating medical personnel as witnesses); *id.* at 10-11 (discussing claim of ineffectiveness for failure to adequately investigate Campbell's injuries in relation to the hospital reports).)  The court found that this evidence did not entitle Townsville to relief because it was not favorable to him, as "the contents of the records did not demonstrate a 'lack' of injury, but instead, confirmed the opposite." (*Id.* at 5.  *See also id.* at 8 ("The Court's review of the records provided by [Townsville] clearly confirmed the existence of injuries consistent with those described via evidence presented by the Commonwealth."); *id.* at 11 (same).)  Townsville has not demonstrated by clear and convincing evidence that the state court's finding that Campbell's testimony was consistent with the medical records is erroneous.  As a result, we will not disturb that factual finding.  *See* 28 U.S.C. § 2254(e)(1) (describing standard of review of state court factual findings).  In light of the finding that the allegedly suppressed evidence did not bear on Campbell's credibility and that it cannot be considered exculpatory, we find nothing unreasonable in the state court's conclusion that Townsville's rights were not violated by its alleged suppression.[24]  There is no reasonable likelihood that this evidence would have affected the jury's

---

[24] There is also a significant issue as to any actions taken by the Commonwealth to "suppress" this evidence.  Townsville has not directed our attention, for example, to any evidence that the prosecutor

verdict in this case.  *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972).[25]  Therefore, habeas relief is not warranted on this claim.

### 2.     "Foul blows"

Townsville's other claim of prosecutorial misconduct is that the prosecutor "str[uck] foul blows" during the trial and sought a conviction at the expense of justice.  (Pet. at 9D; Pet'r Br. at 33.) More particularly, Townsville contends that the prosecutor in his case (1) "committed perjury" (or knowingly allowed all of the Commonwealth's witnesses, but particularly Campbell, to commit perjury), (2) did not disclose the rebuttal witnesses in a timely manner, allegedly in order to ambush Townsville and undermine his defense, and (3) referred in her opening statement and closing argument to Townsville having fled from the police when she knew that his flight followed a separate and unrelated crime.  (Pet. at 9D; Pet'r Br. at 34-38.)

### (1)     Perjury allegation

Townsville's claim that he was the victim of rampant perjury was not adjudicated by the state court.  As with several of his other claims here, it appears from the record that he raised this claim for the first time in his appeal of the dismissal of his PCRA petition.  (1925(b) Statement, 6/5/05 at 11-12 (contained in state court record).  *See also* Excerpt from Appellant's Br. to Pa. Super. Ct. at Question 12 (appended to Doc. No. 9).)  The procedural posture of this claim thus raises an issue as to whether Townsville has "fairly presented" this claim to the state court in satisfaction of the

---

was even in possession of Campbell's medical records at the time of trial.

[25] See also our discussion, *supra*, concerning a charge of aggravated assault premised on a knowing attempt to cause serious bodily injury.  Given this viable theory, we agree with Respondents that the degree of injury actually sustained by Campbell is not controlling.

exhaustion requirement of Section 2254(b).  However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents have not asserted procedural default as to this claim, we will consider it.

There is no question that a conviction obtained through the use of testimony known by the prosecution to be false violates the Due Process Clause of the Fourteenth Amendment.  *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In this case, however, Townsville has failed to demonstrate that such perjury occurred, let alone knowingly occurred.  He contends that "[t]he prosecution also allowed her witness to commit perjury where she" — presumably the assistant district attorney — "knew that it was perjury" and that "the biggest case of perjury was with the complainant where she testified to her alleged injuries."  (Pet'r Br. at 37.)  He contends that the falsity of Campbell's testimony regarding her injuries was proven by the medical records that the Commonwealth "withheld" from the defense.  (*Id.*)

We are not persuaded that this claim entitles Townsville to any relief.  With respect to the veracity of Campbell's testimony regarding her injuries, we note, as we discussed earlier in this Report, that the state court found the medical records concerning Townsville's emergency room treatment to be consistent with her testimony regarding the injuries she sustained.  Nothing in the record before us demonstrates that Campbell was not truthful in her testimony or, further, that the prosecutor knew her testimony to be untruthful.  Furthermore, we do not find that there was a reasonable likelihood that any falsity in Campbell's testimony on this point could have affected the jury's verdict in light of the fact that a conviction for aggravated assault was supported by the evidence that Townsville's actions constituted an *attempt* to cause serious bodily harm.  As we discussed earlier in this Report, the actual injuries sustained by Campbell were not controlling.  We

see no basis for habeas relief on this claim.

### (2)    Rebuttal witnesses

The claim that the prosecutor engaged in misconduct in failing to disclose her rebuttal witnesses in a timely manner was not among the issues raised by Townsville on direct appeal or on PCRA review.  (*See* Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A]; Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C]; 1925(b) Statement, 6/5/05 (contained in state court record); Excerpt from Appellant's Br. to Pa. Super. Ct. (appended to Doc. No. 9).)  As a result, this sub-claim may now be considered procedurally defaulted.  Townsville has not demonstrated cause for the failure to have raised this issue in state court nor has he asserted actual innocence.  We will not consider this claim.

### (3)    Argument on flight

The final "foul blow" identified by Townsville, regarding the prosecutor's arguments concerning his flight, does not entitle him to relief either.  The state court concluded on PCRA review that the prosecutor's argument on this point was not improper because the evidence presented at trial provided the basis for the prosecutor's argument.  (Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 19-21.[26])  For the same reasons that we concluded that the jury instruction regarding flight was not improper, we conclude that the prosecutor's comments on this point were not improper.  Therefore, the state court's rejection of this claim does not constitute an unreasonable application of federal constitutional law.  Townsville is not entitled to relief on any of his claims of prosecutorial misconduct.

---

[26] The PCRA court discussed this issue in the context of Townsville's claim that his attorney was ineffective for failing to object to this portion of the prosecutor's argument.

### D.       Ineffective assistance of counsel claims

Finally, Townsville's petition sets forth fourteen alleged instances in which he contends his Sixth Amendment rights were violated due to the ineffective assistance of counsel.[27]  Before proceeding with our consideration of those allegations, we first describe the standard by which we must consider such claims.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance consistent with the Sixth Amendment.  This same standard has been incorporated by the Pennsylvania courts for challenges of ineffective assistance of counsel under the Pennsylvania constitution.  *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of *Strickland* test to ineffective assistance of counsel claims).  Therefore, a Pennsylvania court's resolution of a claim of ineffective assistance of counsel is presumed to apply clearly established federal law and is due the deference required by 28 U.S.C. § 2254(d).  This leaves us only to determine whether the state court unreasonably applied the *Strickland* elements in this case or based its decision on an unreasonable factual determination.

Under the *Strickland* two-prong test, a petitioner must show (1) that his attorney's representation fell well below an objective standard of reasonableness, and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different.  *Id.* at 688-96.

---

[27] Townsville's allegations relate to his counsel's performance during and preparing for trial; during and preparing for the sentencing hearing; and on appeal.  He was represented by different attorneys at each of those stages.  *See* Pet. at 10 (identifying counsel).

To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant [or petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

To satisfy the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, were it not for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* Counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

For the reasons that follow, we believe that none of these claims warrant habeas relief.[28]

### 1.    "Abandonment" by counsel post-trial

Townsville contends that his trial counsel "committed a total dereliction of duty and abandoned the Petitioner following his trial but prior to sentencing," which caused the appointed

---

[28] We will refer to Townsville's various sub-claims using the numbering he employed in his submissions. Respondents' answer to the allegations of ineffective assistance of counsel appear only to address the first instance claimed by Townsville. (Ans. at 9-10 (addressing claim that counsel was ineffective for abandoning Petitioner).) We decline Townsville's invitation to deem the District Attorney's failure to address the remaining sub-issues as constituting an admission of the allegations contained therein.

sentencing counsel to have only three days to prepare and which, because that counsel "still had no knowledge of the case," resulted in Townsville not receiving "a fair sentencing proceeding." (Pet. at 9, 9A.)

Our review of the record indicates that this particular instance of alleged attorney ineffectiveness was not one of the many Sixth Amendment claims that the state court adjudicated on direct appeal and on PCRA review. As with several of the other claims raised by Townsville and discussed by us above, it appears that Townsville raised this particular claim for the first time in his appeal of the PCRA court's dismissal of his PCRA petition. (1925(b) Statement, 6/5/05 at 11 (contained in state court record). *See also* Excerpt from Appellant's Br. to Pa. Super. Ct. at Question 14 (appended to Doc. No. 9).) Once again, then, there is an open question as to whether Townsville has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b). However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents have not asserted procedural default as to this claim but instead considered the merits, we will consider it.

Townsville contends that his trial counsel's "performance was deficient in that he abandoned his duty to the Petitioner by totally disappearing after trial but prior to sentencing to the point that no one could find or make contact with him." (Pet'r Br. at 6.) The state court record confirms that there was some problem with trial counsel's representation of Townsville post-verdict. Judge Jones commented at a calling of the case approximately three months after the verdict that "this matter has been open for an extensive period of time because of the total dereliction of duty on the part of trial counsel. After the verdict was announced, he's not been available. We haven't even seen him since that day, not heard from him or anything." (N.T. 1/22/99 at 4.) As a result of this situation, the court

36

appointed new counsel for Townsville to represent him at the sentencing hearing and in any post-sentence motions.  (*Id.* at 3-4.)  Because of some sort of miscommunication, the new counsel had not received notice of the appointment until the date scheduled for sentencing.  The new counsel asked for a continuance to allow him to review the relevant materials, and the court granted the continuance request.  (*Id.* at 4-5.)

Even if we were to conclude that trial counsel's representation of Townsville following the verdict fell well below an objective standard of reasonableness, we do not believe that there is a reasonable probability that, absent this "dereliction of duty" by trial counsel following the conviction, Townsville would have received a different sentence.  In order to prevail on this claim, Townsville would have to demonstrate that he would have fared better had he been represented by his trial counsel at sentencing than he did with new counsel.[29]  We are not willing to infer that, simply because trial counsel would have been more familiar with the facts of his case, he could have argued more effectively than did sentencing counsel that Townsville should receive a mitigated sentence.  Townsville apparently believes the trial court would have been persuaded at the sentencing phase that the jury was mistaken and that Townsville was only acting in self-defense in response to the unprovoked blows that Campbell leveled on him.  Regardless of which attorney Townsville might have hoped could make this argument, it would not have been successful.  There is no evidence that he was prejudiced by being represented at his sentencing proceeding by new counsel rather than his trial counsel.  Therefore, this claim does not provide a basis for habeas relief.

---

[29] Townsville does not suggest that the trial court held against him in any way the fact that his counsel abandoned the case, nor does it appear to us that it did.

### 2. Eliciting prejudicial statements concerning other robbery

Townsville next complains that his trial counsel "elicited prejudicial statements from" Det. Gaylord concerning the other robbery and incident involving the car used in the Campbell attack, which he contends implied he had a criminal history and which would have influenced the jury. (Pet. at 9A; Pet'r Br. at 2.)

Townsville contended on direct appeal that his trial counsel was ineffective in his "irrelevant and imprecise cross-examination of" Det. Gaylord, which resulted in the testimony referring to the unrelated robbery. (1925(b) Statement, 10/25/01 [Ans. at Ex. A, Att. A] at ¶ 5.)  The state court found that counsel's performance was not deficient because the line of questioning of Det. Gaylord was an effort to show that the detective made a mistake during his investigation, which was a "strategic decision designed to effectuate the best interest of his client." (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 16-17.)  The state court found that there was a reasonable basis for this strategy and, therefore, that counsel's actions could not be deemed ineffective assistance.  In addition, the state court found that Townsville failed to show that the outcome of his case would have been different but for this line of questioning by his attorney.  (*Id.* at 17.)

We see nothing unreasonable in the state court's application of the *Strickland* standard in this instance.  The state court properly assessed the matter from the perspective of counsel at the time.  We also agree with the state court that the testimony elicited from Det. Gaylord does not undermine confidence in the outcome of this case, for the reasons discussed earlier in our Report.  Therefore, we find no basis to grant habeas relief here.

### 3.   Failure to adequately investigate victim's injuries

Townsville contends that trial counsel "failed to investigate the alleged injuries of the complainant in this case" and that, had he performed an adequate investigation, he would have discovered that her injuries were consistent with what one would receive "in a mutual fight." (Pet. at 9A.)

Townsville raised this issue on direct appeal and raised related issues on PCRA review. On direct appeal, Judge Jones noted that Townsville had not provided any basis for his allegation that trial counsel failed to investigate the nature and circumstances of the complainant's injuries and that Townsville appeared merely to speculate that further investigation in this matter would have yielded a more favorable result for him. (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A], at 12.[30]) These same deficiencies plague his argument in this Court. Similarly, the state courts rejected Townsville's assertions on PCRA review that his attorney was ineffective for failing to "challenge" Campbell's testimony regarding her injuries by subpoenaing hospital reports and medical experts, citing the fact that the information contained in the medical records was consistent with the injuries about which Campbell testified. As a result, Townsville had not demonstrated that his counsel's alleged omission resulted in prejudice to him. (Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 8-9.)

The state court properly identified the deficiencies in this claim under the *Strickland* standard. As we find nothing unreasonable in the state court's rejection of this claim, it does not provide a basis for relief.

---

[30] Townsville apparently did not press this issue in the Superior Court on direct review. (Pa. Super. Ct. Op., 10/25/02 [Ans. at Ex. B] at 2 (quoting issues listed in appellant's brief).)

### 4.      Failure to request jury instruction on self-defense

Townsville asserts that trial counsel was ineffective in failing to request that the jury be charged on self-defense in light of the fact that Campbell allegedly "admitted to starting the altercation by punching the Petitioner in the face without provocation." (Pet. at 9A. *See also* Pet'r Br. at 2.)

This appears to be another claim that Townsville raised for the first time in his appeal of the PCRA court's dismissal of his PCRA petition. (1925(b) Statement, 6/5/05 at 14 (contained in state court record). *See also* Excerpt from Appellant's Br. to Pa. Super. Ct. at Question 19 (appended to Doc. No. 9).) The procedural posture of this claim thus raises an issue as to whether Townsville has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b). However, in light of the fact that the state court did not make a finding that this claim was waived and because Respondents have not asserted procedural default as to this claim, we will consider it.

Pennsylvania law provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa. Cons. Stat. § 505(a). In order for counsel's failure to have requested a jury instruction on self-defense to possibly amount to deficient performance under *Strickland*, there would have to have been evidence presented at trial supporting such an instruction. In this case, we doubt that there was sufficient evidence to warrant giving such an instruction had counsel requested it. Townsville's incredible version of events — that Campbell attacked him without provocation and he merely kept pace with her blow for blow — is apparent from his submissions as part of this habeas petition.

40

However, the evidence presented at trial — a trial at which Townsville did not testify — does not substantiate this theory at all. The uncontested testimony at trial was that Campbell was walking home alone in the evening when Townsville began to follow her in his car and to try to speak to her and that, after she tried to ignore or rebuff his attempted advances, he ran towards her from behind. (N.T. 10/16/98 at 48-60.) It is clear from the evidence that she swung at him because of his threatening actions towards her. It is equally clear that her actions in scratching his neck and biting his arm were part of an attempt to extricate herself from his grasp. The evidence showed that Campbell's actions were justified in that they were "for the purpose of protecting [her]self against the use of unlawful force" by Townsville. *See* 18 Pa. Cons. Stat. § 505(a). There was no reasonable basis, however, from which the jury could have concluded that *Townsville's* actions towards *Campbell* were justified.

As a self-defense instruction was not warranted in this case, the failure of trial counsel to request such an instruction cannot be deemed deficient performance resulting in any prejudice to Townsville under *Strickland*.[31] He is not entitled to habeas relief on this claim.

### 5. Failure to request appropriate version of *Kloiber* instruction

Townsville contends that his trial counsel "did not know about the existence of the Kloiber instruction and when the Court sua sponte decided to give the instruction[,] Counsel failed to ague which version should be given." (Pet. at 9A.) He asserts that "the correct version of the charge" would have been favorable to him. (Pet'r Br. at 7.)

_____

[31] In addition, a claim of self-defense would have been inconsistent with the theory presented by defense counsel beginning in his opening statement: that Townsville had an alibi at the time of the attack and that the case against Townsville was a circumstantial one based on a misidentification. (*See, e.g.,* N.T. 10/16/98 at 38.)

Townsville raised an issue as to his attorney's effectiveness with respect to a *Kloiber* instruction both on direct appeal and on PCRA review.  In both cases, the state court found that the claim did not present a basis for relief because the trial court gave the proper instruction.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 8-10; Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 13-15.) In light of our discussion earlier in this Report concerning the instruction the court gave to the jury on the *Kloiber* issue, we see nothing unreasonable in the state court's conclusion that Townsville did not receive ineffective assistance from his trial counsel in this regard.

### 6.-8.    Failure to object to prejudicial photo array; failure to object to incomplete jury instructions; and failure to argue against prosecution for aggravated assault

Townsville contends that his trial counsel should have argued "more thoroughly" against the use of a photo array that implied to the jury that he had several prior arrests.  (Pet. at 9A(i).)  He separately contends that his attorney failed to object when the trial court instructed the jury with respect to only two of five elements of the aggravated assault charge and, as to the terroristic threats charge, without informing the jury that "spur-of-the-moment threats resulting from anger" do not constitute terroristic threats.  (Pet. at 9A(i).)  In addition, Townsville contends that the facts of the case demonstrated that what happened was "clearly simple assault in a mutual fight" that was being "bootstrapped up to an Aggravated Assault" and that trial counsel was ineffective in failing to object to this "bootstrapping."  (Pet. at 9A(i).)

These claims of attorney ineffectiveness were not among the issues raised by Townsville on direct appeal or on PCRA review.  (Comm. Pl. Ct. Op., 12/3/01 [Ans. at Ex. A] at 11-17; Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 7-22.  *See also* 1925(b) Statement, 6/5/05 (contained in state court record); Excerpt from Appellant's Br. to Pa. Super. Ct. (appended to Doc. No. 9).)  As a result,

these sub-claims may now be considered procedurally defaulted.  Townsville has not demonstrated cause for the failure to have raised these issues in state court nor has he asserted actual innocence. We will not consider these claims.[32]

> **9., 11.-13.    Failure to object to length of sentence and lack of written statement; failure to object to use of pre-sentence investigation; failure to argue against court sentencing based on dislike; and ineffective argument for mitigated sentence**

Townsville also raises several claims relating to the performance of his counsel at the sentencing phase.  He complains that his counsel at the sentencing hearing should have objected when the trial court sentenced him to the maximum sentence for aggravated assault, which was outside of the guidelines, without a contemporaneous written statement and when there was nothing about this case that warranted an exception to the guidelines.  (Pet. at 9A(i), 9A(ii).)  He contends that his sentencing counsel was ineffective for failing to object to the court relying on facts contained in the pre-sentence investigation to aggravate his sentence.  (Pet. at 9A(ii).)  He also asserts that counsel failed to object to the judge's "injecting his personal feelings into the case and sentencing Petitioner outside the guidelines."  (Pet'r Br. at 8.  *See also* Pet. at 9A(ii).)  Finally, he contends that his sentencing counsel contributed to his receiving an unfair sentence because he did not know the facts of the case and failed to show "what kind of person the Petitioner was," that is, someone who was taking care of his young daughter and sick, elderly mother.  (Pet. at 9A(iii).)

Townsville did not raise in the state court any issue as to the effectiveness of the attorney who represented him at the sentencing phase, save for one issue that we discuss below.  (Comm. Pl. Ct.

---

[32] As with several of the other defaulted claims, these claims would fail on the merits anyway in light of our conclusion that there was nothing improper in the court and/or prosecution's actions.  As a result, there was no meritorious objection that counsel failed to make on these issues.

43

Op., 12/3/01 [Ans. at Ex. A] at 11-17; Comm. Pl. Ct. Op., 6/2/05 [Ans. at Ex. C] at 7-22. *See also* 1925(b) Statement, 6/5/05 (contained in state court record); Excerpt from Appellant's Br. to Pa. Super. Ct. (appended to Doc. No. 9).)  In light of the fact that the opportunity to bring such claims in state court has passed, these claims are now procedurally defaulted.  Townsville has not demonstrated any cause for his failure to raise these claims in state court and has not made a colorable showing of innocence.  We will not excuse the default of these claims.

### 10.    Failure to request additional time to prepare

Townsville also contends that his sentencing counsel was ineffective "for failing to request more than three days to prepare for sentencing[,] which would have allowed him to obtain transcripts of the trial and to learn about the case and prepare aids in sentencing which would have allowed Counsel to argue the facts of this case in order to mitigate the Petitioner's sentence." (Pet. at 9A(ii).)

This appears to be another claim that Townsville raised for the first time in his appeal of the PCRA court's dismissal of his PCRA petition.  (1925(b) Statement, 6/5/05 at 16 (contained in state court record).  *See also* Excerpt from Appellant's Br. to Pa. Super. Ct. at Question 21 (appended to Doc. No. 9).)  The procedural posture of this claim thus raises an issue as to whether Townsville has "fairly presented" this claim to the state court as to satisfy the exhaustion requirement of Section 2254(b).  However, in light of the fact that the state court did not make a finding that this claim was waived and that Respondents have not asserted procedural default as to this claim, we will consider it.

Townsville appears to contend here that he would have received a more favorable outcome at sentencing had his attorney "argue[d] the facts of this case" found in the trial transcripts.  Without going into whether his counsel was deficient in leaving himself only three days to prepare for

44

sentencing, we think it safe to assume that arguing the facts of the case — as Townsville attempted

to do during his allocution (N.T. 1/25/99 at 4-7) — would not have resulted in a mitigated sentence.

As we have discussed above, nothing about the facts of this case was particularly favorable to

Townsville.  Counsel at sentencing took the approach, after having reviewed the presentence report

and Townsville's extensive criminal record, of asking that "the Court not give up all hope on him"

in light of the fact that he had "several young children which he'd like to be able to at some point

come out and take part in raising and being part of their lives."  (N.T. 1/25/99 at 3-4.)  We fail to see

how the decision of counsel not to request a continuance of more than three days for the sentencing

hearing amounted to deficient performance or that it prejudiced Townsville in any way.  Habeas

relief is not warranted.

### 14.    Performance of appellate counsel

Finally, Townsville asserts that "appellate counsel" was ineffective because that attorney

refused to "file" Townsville's meritorious issues and improperly deemed them to be without merit.

(Pet. at 9A(iii); Pet'r Br. at 8-9.)[33]

On PCRA review, Townsville asserted that appellate counsel was ineffective for failing to

raise the ineffectiveness of all previous counsel.  The state court rejected that claim based on its

findings that neither pre-trial nor trial counsel was ineffective.  (Comm. Pl. Ct. Op., 6/2/05 [Ans. at

Ex. C] at 22.)  For the same reasons provided by the state court, and in light of our discussion above,

we see nothing unreasonable in the state court's adjudication of this claim and conclude that no

---

[33] Townsville does not further explain this claim.  He does not identify any issues that appellate counsel refused to raise or demonstrate that he presented any particular issues to his appellate counsel.

habeas relief is warranted.

## V.   CONCLUSION

We believe we have given Townsville a fair and thorough reading of his petition and related papers.  We find no excuse for the procedural default of several of the claims he seeks to raise here and are confident that no miscarriage of justice results from our failure to review them.  Having considered the properly exhausted claims and even certain claims for which exhaustion was not clear, we find his petition to be meritless.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district court judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right.  Where the district court has denied a claim on procedural grounds, a COA is not appropriate unless it also appears that jurists of reason would find the correctness of the procedural ruling to be debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, for the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in denying the present petition.  Accordingly, we do not believe a COA should issue.  Our Recommendation follows.

## R E C O M M E N D A T I O N

**AND NOW**, this 31st day of January, 2007, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.  It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE**, as we do not believe that Petitioner has made a substantial showing of the denial of a constitutional right or that reasonable jurists would find the correctness of the procedural aspects of this Recommendation debatable.


BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE